IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| TRAVIS C., | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil No. TMD 18-1087 |
| v. | * | |
| | * | |
| | * | |
| ANDREW M. SAUL, | * | |
| Commissioner of Social Security, | * | |
| | * | |
| Defendant.[1] | * | |
| | *********** | |

## MEMORANDUM OPINION GRANTING PLAINTIFF'S
## <u>ALTERNATIVE MOTION FOR REMAND</u>

Plaintiff Travis C. seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 14) and Defendant's Motion for Summary Judgment (ECF No. 19).[2] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security. He is, therefore, substituted as Defendant in this matter. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

[2] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**.

I

**Background**

On September 6, 2016, Administrative Law Judge ("ALJ") Clark S. Cheney held a hearing in Baltimore, Maryland, where Plaintiff and a vocational expert ("VE") testified. R. at 37-87. The ALJ thereafter found on December 1, 2016, that Plaintiff was not disabled from his alleged onset date of disability of July 1, 2009, through the date of the ALJ's decision. R. at 20-36. In so finding, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can lift 20 pounds occasionally and 10 frequently; can stand or walk for six hours out of an eight hour day; can sit for six hours out of an eight hour day; can climb ramps and stairs occasionally but can never climb ladders, ropes, or scaffolds; can balance occasionally; and can do occasional stooping, kneeling, crouching, and crawling.

R. at 28. In light of this RFC and the VE's testimony, the ALJ found that Plaintiff could perform his past relevant work as a bakery/assembly line worker and could perform other work, such as a router, bottle packer, or mail clerk. R at 30-31. The ALJ thus found that Plaintiff was not disabled from July 1, 2009, through December 1, 2016. R. at 31.

After the Appeals Council denied Plaintiff's request for review, Plaintiff filed on April 16, 2018, a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case then was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

# II

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III

### <u>Substantial Evidence Standard</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## IV

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[4] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-11,

---

[4] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

ECF No. 14-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 5. In particular, he contends that the ALJ "failed to set forth a narrative discussion setting forth how the evidence supported each conclusion, citing specific medical facts and nonmedical evidence." *Id.* at 5-6. Plaintiff further asserts that the ALJ erred in evaluating the opinions of Dr. Hakim, his treating physician. *Id.* at 6-10. He also contends that, in assessing his RFC, the ALJ failed to account for his ongoing complaints and shortness of breath. *Id.* at 10-11. Plaintiff finally argues that the ALJ erroneously evaluated his subjective complaints. *Id.* at 11-13. For the reasons discussed below, the Court remands this case for further proceedings.

SSR 96-8p, 1996 WL 374184 (July 2, 1996), explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where

other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff contends that the ALJ erred in evaluating the opinions of John P. Hakim, M.D., his treating physician (R. at 476-78, 480-82, 564-65, 568-70). Pl.'s Mem. Supp. Mot. Summ. J. 6-10, ECF No. 14-1. On June 18, 2015, Dr. Hakim completed a "Physical Impairment Questionnaire." R. at 476-78. He noted that he first saw Plaintiff on September 24, 2014, with follow-up appointments every three months. R. at 476. His diagnoses included HIV and cardiomyopathy, and Plaintiff's symptoms included dyspnea on exertion and fatigue. R. at 476. Dr. Hakim opined that Plaintiff's symptoms were "constantly" severe enough to interfere with the attention and concentration required to perform simple work-related tasks. R. at 476. The doctor noted that Plaintiff's medications caused severe fatigue and malaise. R. at 476. According to Dr. Hakim, Plaintiff would "need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60-minute lunch, and the typical 15-minute break in the afternoon." R. at 476. Dr. Hakim estimated that Plaintiff could walk five city blocks without rest or significant pain. R. at 476. Further, Plaintiff could sit for sixty minutes and stand/walk for ten minutes at a time. R. at 476. Dr. Hakim also opined

that Plaintiff could sit for a total of six hours and stand/walk for a total of one hour in an eight-hour workday. R. at 476. The doctor also opined that Plaintiff would not need to take unscheduled breaks during an eight-hour workday. R. at 476. According to Dr. Hakim, Plaintiff could lift less than ten pounds frequently and up to twenty pounds occasionally, but he could never lift fifty pounds. R. at 477. Dr. Hakim also estimated that Plaintiff would likely be absent from work once or twice a month as a result of his impairments or treatments. R. at 477. The doctor ultimately opined that Plaintiff was not physically capable of working an eight-hour day for five days per week on a sustained basis. R. at 477.

On September 1, 2016, Dr. Hakim completed a "Physical Assessment" form regarding Plaintiff's impairments. R. at 564-65. This time, Dr. Hakim opined that Plaintiff would not "need to recline or lie down during a hypothetical 8-hour workday in excess of the typical 15-minute break in the morning, the 30-60-minute lunch, and the typical 15-minute break in the afternoon." R. at 564. Dr. Hakim opined, however, that Plaintiff could only walk one city block without rest or significant pain. R. at 564. According to Dr. Hakim, Plaintiff could sit for four hours and stand/walk for two hours in an eight-hour workday. R. at 564. Although Dr. Hakim opined that Plaintiff would need to take unscheduled breaks during an eight-hour workday, the doctor did not explain the frequency or duration of these breaks. R. at 564. Dr. Hakim again opined that Plaintiff could lift less than ten pounds frequently and up to twenty pounds occasionally, but he could never lift fifty pounds. R. at 564. Dr. Hakim also estimated that Plaintiff would likely be absent from work three or four times a month because of his impairments or treatments. R. at 565.[5]

---

[5] Dr. Hakim also completed two mental capacity assessments of Plaintiff's ability to do work-related activities daily in a regular work setting. R. at 29, 480-82, 568-70. The ALJ gave little weight to these assessments because "Dr. Hakim is not a psychiatrist or mental health provider.

9

When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. §§ 404.1527, 416.927. "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

"In general, an ALJ should accord 'more weight to medical opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s).'" *Woods v. Berryhill*, 888 F.3d 686, 695 (4th Cir. 2018) (alterations in original) (quoting 20 C.F.R. § 404.1527(c)(2)). A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Lewis v. Berryhill*, 858 F.3d 858, 867 (4th Cir. 2017). Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive

---

Further, the moderate findings in this assessment are not consistent with [Plaintiff's] extensive and independent activities of daily life." R. at 29. Because Plaintiff apparently does not argue that the ALJ erred in evaluating Dr. Hakim's assessments regarding his mental functioning, the Court does not address these opinions. *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 36 (1st Cir. 1994) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived for purposes of appeal.").

contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. In other words, "a treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." *Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c)). An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* §§ 404.1527(c)(3), 416.927(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* §§ 404.1527(c)(4), 416.927(c)(4); *see also Dunn*, 607 F. App'x at 268.

Citing SSR 96-2p, Plaintiff contends that remand is warranted because the ALJ did not evaluate whether the opinions of Dr. Hakim were entitled to controlling weight, whether they came from a treating source, whether they were well supported by medically acceptable clinical and laboratory diagnostic techniques, or whether they were inconsistent with the other substantial evidence in the record. Pl.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 14-1. Under SSR 96-2p, however, "a finding that a physician's opinion is inconsistent with the other

11

substantial evidence in a claimant's case record is adequate to support a determination that the opinion is not entitled to controlling weight." *Burger v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1345, 2015 WL 467662, at *3 n.2 (D. Md. Feb. 2, 2015) (citing SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). Thus, "SSR 96-2p did not require the ALJ to make any additional findings to determine that [Dr. Hakim's] opinions were not entitled to controlling weight." *Id.*

Plaintiff then maintains that, in affording Dr. Hakim's opinions less than controlling weight, the ALJ failed to consider the factors cited in *Johnson* and in 20 C.F.R. §§ 404.1527(c) and 416.927(c). Pl.'s Mem. Supp. Mot. Summ. J. 8-10, ECF No. 14-1. In this case, however, "[w]hile the ALJ did not explicitly analyze each of the *Johnson* factors on the record, the ALJ was clear that [the ALJ] concluded that [Dr. Hakim's] opinion was not consistent with the record or supported by the medical evidence, which are appropriate reasons under *Johnson*" to afford a treating physician's opinion less than controlling weight. *Bishop*, 583 F. App'x at 67.

In any event, Plaintiff fails to demonstrate how a consideration of these factors would alter the weight given by the ALJ to Dr. Hakim's opinions. The ALJ gave "little weight" to Dr. Hakim's physical assessments. R. at 29. The ALJ noted that Plaintiff "admitted that he told Dr. Hakim what to write on the assessments" (R. at 29; *see* R. at 52-53). *See Mastro*, 270 F.3d at 178 (determining that ALJ did not err in not giving controlling weight to treating physician's opinion because, *inter alia*, physician's diagnosis was based largely upon claimant's self-reported symptoms). The ALJ also noted that the "limitations in these forms, which state that [Plaintiff] can walk for one block, are not consistent with his instructions in the treating notes stating that [Plaintiff] should exercise regularly." R. at 29. "The record also indicates that [Plaintiff] goes walking daily. Other records indicate [Plaintiff] has no problem climbing at least six stairs." R. at 29 (citations omitted). Further, Dr. Hakim's opinions regarding Plaintiff's

12

physical functional limitations were contradictory. For example, Dr. Hakim opined in June 2015 that Plaintiff needed to lie down during an eight-hour workday (R. at 476), but in September 2016 he opined that Plaintiff did not need to do so (R. at 564). In June 2015 the doctor opined that Plaintiff could walk five city blocks without rest or significant pain and did not need to take unscheduled breaks in an eight-hour workday (R. at 476), but in September 2016 he opined that Plaintiff could only walk one block without rest or pain and needed to take such breaks (R. at 564). Dr. Hakim further opined in June 2015 that Plaintiff could sit for six hours and stand/walk for one hour in an eight-hour workday (R. at 476), but in September 2016 he opined that Plaintiff could sit for four hours and stand/walk for two hours (R. at 564). The doctor also opined in June 2015 that Plaintiff would be absent from work once or twice a month (R. at 477), but he estimated in September 2016 that Plaintiff would be absent three or four times a month (R. at 565). The Court thus finds that substantial evidence supports the weight given to Dr. Hakim's opinions. *See Sharp v. Colvin*, 660 F. App'x 251, 257 (4th Cir. 2016) (treating physician's treatment notes that were inconsistent with his contrary opinion constituted substantial evidence to support ALJ's decision not to give controlling weight to physician's opinion); *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015) (noting that claimant's daily activities can support ALJ's discounting of treating physician's opinion); *Dunn*, 607 F. App'x at 270-71 (determining that substantial evidence supported ALJ's decision to give limited weight to opinions of claimant's treating psychiatric sources because their opinions were inconsistent with their treatment notes); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (concluding that ALJ properly discounted treating physician's opinion as conclusory because it consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001) (per curiam) (finding that ALJ did not err in giving

physician's opinion little weight where physician's opinion was not consistent with her own progress notes); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999) (considering inconsistency between treating physician's opinion and claimant's daily activities to be specific and legitimate reason to discount treating physician's opinion); *Chavis v. Apfel*, No. 98-1145, 1998 WL 827322, at *3 (4th Cir. Dec. 1, 1998) (per curiam) (unpublished table decision) ("Here, the ALJ properly discounted the opinions of several of [the claimant's] treating physicians that she was disabled because the opinions were conclusory and inconsistent with various activities that [the claimant] has engaged in over the years."); *Craig*, 76 F.3d at 590 (upholding ALJ's rejection of treating physician's opinion because record contained persuasive contradictory evidence; opinion was conclusory and based on claimant's subjective reports, and treating physician's own notes contradicted his opinion).

The Court remands this case, however, because, despite giving "partial weight" to the opinions of the state agency medical consultants (R. at 29, 88-105, 108-29), the ALJ failed to build an "accurate and logical bridge" from the evidence to his conclusion about Plaintiff's RFC to perform light work. As discussed above, an ALJ may

> credit the opinion of a non-treating, non-examining source where that opinion has sufficient indicia of "supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter of the opinion."

*Woods*, 888 F.3d at 695 (quoting *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 268 (4th Cir. 2017)). Here, the ALJ found that, "[c]onsidering [Plaintiff's] heart problems and the record as a whole, a light exertional capacity is appropriate." R. at 29. The ALJ noted that "[t]he State agency limited [Plaintiff] to light exertional work, which is consistent with the record." R. at 29. The ALJ did not, however, explain his conclusion that, on the basis of the evidence in the record,

14

Plaintiff could actually perform the tasks required by light work, such as lifting no more than 20 pounds at a time, frequently lifting or carrying up to 10 pounds, or standing or walking for six hours in an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983); *see also Woods*, 888 F.3d at 694; *Monroe*, 826 F.3d at 190-91 (finding ALJ's analysis that opinions were "supported by the objective evidence" or "consistent with the objective evidence and other opinions of record" or "supported by the objective evidence and the claimant's subjective complaints" precluded meaningful review because analysis was conclusory and incomplete). The ALJ "must *both* identify evidence that supports his conclusion *and* 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods*, 888 F.3d at 694 (alteration in original) (quoting *Monroe*, 826 F.3d at 189). An ALJ's failure to do so constitutes reversible error. *Lewis*, 858 F.3d at 868. Because "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion," the Court remands this case for further explanation as to Plaintiff's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (citing *Woods*, 888 F.3d at 694). The Court thus need not address Plaintiff's remaining arguments, but when evaluating on remand Plaintiff's complaints of fatigue, shortness of breath, and other subjective complaints, the ALJ should consider the type of activities he can perform, the extent to which he can perform them, and how his activities show that he can persist through an eight-hour workday. See *Woods*, 888 F.3d at 694-95; *Brown*, 873 F.3d at 263.

V

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 19) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 14) is **GRANTED**. Defendant's final decision is

**REVERSED** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order will issue.

Date: August 29, 2019

/s/
Thomas M. DiGirolamo
United States Magistrate Judge